**EOD**
04/07/2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MARILYN McKEITHAN** | § | Case No. 10-60825 |
| xxx-xx-5107 | § | |
| | § | |
| Debtor | § | Chapter 7 |

## MEMORANDUM OF DECISION[1]

This matter is before the Court upon hearing of the "Objection to Debtor's Claim of Exemption" filed in the above-referenced case by Bradford M. Condit, a creditor and party-in-interest, to which a joinder was filed by Jason R. Searcy, Chapter 7 Trustee. The objection seeks to invalidate the homestead exemption claimed by the Debtor, Marilyn McKeithan ("Debtor"), as to certain real property identified as Lot 9, Block 11, Stonegate North Unit 2, Corpus Christi, Nueces County, Texas, more commonly referenced as 5401 Flynn Parkway in Corpus Christi (hereafter, the "Nueces County Property"). At the conclusion of the hearing on these matters, each party was permitted to file post-submission briefs. Upon due consideration of the evidence and review of the applicable legal authorities, including the post-submission briefs filed by each party, the Court concludes that the Objection to Debtor's Exemptions should be overruled.[2]

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] This Court has jurisdiction to consider the objections pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

*Factual and Procedural Background*

The Debtor, Marilyn McKeithan, is an elderly woman who lived in Corpus Christi for over thirty years. She, along with her late husband, purchased the Nueces County Property in 1972 and raised their daughter there. There is no dispute that the Texas homestead protections attached to the Nueces County Property and constituted the McKeithans' marital homestead. In fact, the Nueces County Property is still identified on the Nueces County tax roll as the homestead of the Debtor.[3]

Serious medical problems hit the McKeithan family in 2002. The Debtor's husband was diagnosed with terminal cancer and the Debtor also suffered a serious illness that year that required major surgery and rendered her bedridden for a number of weeks. Unable to care for herself or to assist with her husband because of her illness, and facing a long and tedious road to recovery, the Debtor made the difficult decision to go and live with her daughter in Baton Rouge in lieu of entering a nursing care facility. She returned to Corpus Christi for lengthy stays as her health permitted.

After her husband's death in late 2002, the Debtor continued to reside in the Nueces County Property. In 2004 she experienced a debilitating shoulder injury that precluded driving for a substantial period and required extensive physical therapy. Because there was no relative living near Corpus Christi, the Debtor again moved in with her daughter in Baton Rouge as a matter of sheer practicality. To avoid the nine-hour

---

[3] Ex. K.

drive to Corpus Christi, the Debtor began to consult with doctors in Baton Rouge regarding her medical condition as a matter of convenience for her and her daughter. Her medical progress was slow and she needed the care, attention and supervision that her daughter could provide.

From 2004 through the date of the filing of this case, the Debtor has primarily lived with her daughter and the daughter has been her primary caregiver. First in Baton Rouge and now in Tyler, to which her daughter moved in mid-2006, the Debtor has never really been physically well enough to live alone. She has had numerous ongoing medical problems, particularly after she was involved, along with her daughter, in a serious car accident in Victoria in 2008 that occurred on one of the trips to Corpus Christi. Upon her move to Tyler with her daughter,[4] the Debtor procured new medical providers in Tyler. Her driver's license now reflects her daughter's Tyler address, as a matter of convenience and in order to provide a valid contact address in the event of an emergency. When she obtained her new license with her daughter's Tyler address, she agreed to become registered to vote in Smith County. She also purchased an automobile from a Tyler dealership in 2009, using her daughter's address as her own.[5]

However, throughout that time, with her daughter's assistance, she has returned to Corpus Christi several times a year to check on her home in Nueces County and to deal

---

[4] The evidence establishes that the Debtor played no financial role in the purchase of the daughter's new home in Tyler.

[5] Ex. 13

with ongoing legal problems arising from her former ownership of certain commercial property located there. Since the onset of her serious medical problems, the Debtor has never gotten well enough to travel alone on such long trips. During those return trips to Corpus Christi, the Debtor would always stay in her home and deal with whatever problems had arisen with the care of the property.[6]

This is the only residence that the Debtor has owned since 1972 and she maintains her intent to return there if her health permits. Except for small personal items, all of her furnishings and household items remain at that residence. Throughout these transitional periods involving her health, the Debtor has always maintained utility and telephone service at the Nueces County Property. She has timely paid the taxes on the property and it retains its homestead exemption for tax purposes. She has, without interruption, maintained insurance coverage on the Property. Despite her daughter's pleas, the Debtor has never listed the Nueces County Property for sale. At all times germane hereto, the Debtor has never declared a new homestead nor in any way altered the Nueces County homestead declaration.

*Discussion*

The commencement of a bankruptcy case creates an estate encompassing all legal and equitable interests in property of the debtor as of the petition date, including any

---

[6] Throughout this time, the Debtor has hired assistance to maintain the physical upkeep of the property.

property that might potentially be exempt. 11 U.S.C. §541(a). The debtor may then exempt certain property from the bankruptcy estate by claiming either the federal exemptions provided by §522(d), or any other exemptions provided by applicable federal, state, or local law. 11 U.S.C. §522(b). In assessing a debtor's claimed exemptions, the court must look to state law to interpret the state exemption rights. *Bradley v. Pacific Southwest Bank (In re Bradley)*, 121 B.R. 306, 312 (Bankr. N.D. Tex. 1990), *rev'd on other grounds*, 960 F.2d 502 (5th Cir. 1992), *cert. denied sub. nom.*, *Commonwealth Land Title Ins. Co. v. Bradley*, 507 U.S. 971 (1993); *see also In re Moody,* 77 B.R. 580, 590 (S.D. Tex. 1987) ["Bankruptcy courts must resort to state law for an interpretation of state exemption rights in homesteads."], *aff'd Matter of Moody*, 862 F.2d 1194 (5th Cir.), *cert. denied*, *Moody v. Smith*, 503 U.S. 960 (1992). The facts and law existing as of the date of the petition govern a debtor's claimed exemptions. *Zibman v. Tow*, 268 F.3d 298, 302 (5th Cir. 2001) ["This focus on the status as of the date of filing is commonly referred to as the 'snapshot' approach to determining the extent of the bankruptcy estate and the scope of the exemptions."]; *Hrncirik v. Farmers Nat'l Bank (In re Hrncirik),* 138 B.R. 835, 839 (Bankr. N.D. Tex. 1992) [stating that exemptions are determined as of the date of the filing of the bankruptcy petition]. Because the Debtor in this case selected the Texas state law exemptions, the Court must look to Texas law existing on the petition date.

The Texas Constitution, both now and on the petition date, states in relevant part:

> The homestead . . . in a city, town or village, shall consist of lot or contiguous lots amount to not more than 10 acres of land, together with any improvements on the land; . . .[7]

Similarly, TEX. PROP. CODE ANN. §41.002 (Vernon 2000) states as follows:

> (a) If used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business, the homestead of a family or a single, adult person, not otherwise entitled to a homestead shall consist of not more than 10 acres of land which may be in one or more contiguous lots, together with any improvements thereon . . . .

The parties have stipulated that the Debtor established homestead rights at one time in the Nueces County Property. Those established homestead rights are subject to rigid protections. *Pierce v. Washington Mut. Bank*, 226 S.W.3d 711, 717 (Tex. App. – Tyler 2007, pet. denied) ["Homestead protection is a treasured liberty in Texas, which has been encrusted in its constitution since 1839"]. Thus, there is a presumption under Texas law that such rights continue until abandonment and, consistent with the ultimate burden of persuasion imposed by FED. R. BANKR. P. 4003(c), the objecting parties, as the parties asserting the abandonment, must bear the burden of proving it.[8] *Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex. 1971) ["When homestead rights are once shown to exist in property,

---

[7] *See* 3 TEX. CONST. art. XVI, §51 (West Supp. 2010). Texas courts have always liberally construed any claimed homestead exemption. *Woods v. Alvarado State Bank*, 19 S.W.2d 35 (Tex. 1929) ["The rule that homestead laws are to be liberally construed to effectuate their beneficent purpose is one of general acceptation."] (*citing Trawick v. Harris*, 8 Tex. 312 (Tex. 1852)).

[8] Homestead property in Texas loses its homestead character only upon death, alienation, or abandonment. *See U.S. v. Rodgers*, 461 U.S. 677, 685-86 (1983); *Duran v. Henderson,* 71 S.W.3d 833, 842 (Tex. App. — Texarkana 2002, pet. denied).

they are presumed to continue, and anyone asserting an abandonment has the burden of proving it by competent evidence."] (*citing Rancho Oil Co. v. Powell*, 142 Tex. 63, 175 S.W.2d 960 (1943); *Burkhardt v. Lieberman*, 138 Tex. 409, 159 S.W.2d 847, 852 (1942) ["It must be undeniably clear and beyond almost the show, at least (of) all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption"]; *Moorhouse v. Crew*, 273 S.W.2d 654 (Tex. Civ. App. – San Antonio 1954, writ ref.'d).

In attempting to carry its burden, the objecting parties must affirmatively prove "both the cessation or discontinuance of use of the property as a homestead, coupled with the intent to permanently abandon the homestead." *Estate of Montague v. National Loan Investors*, L.P., 70 S.W.3d 242, 248 (Tex. App. – San Antonio 2001, pet. denied) (*citing Womack v. Redden,* 846 S.W.2d 5, 7 (Tex. App. – Texarkana 1992, writ denied)); *see also Firstbank v. Pope*, 141 B.R. 115, 120 (E.D. Tex. 1992) ["(A)bandonment requires not only intent to permanently abandon the former homestead, but also overt acts of discontinued use of the property."]. Moreover, the burden of proof to establish the abandonment of a claimant's homestead rights is a stringent one. *National Loan Investors*, 70 S.W.3d at 248 ["The evidence relied on as establishing abandonment of a homestead must make it *undeniably clear* that there has been a total abandonment with an intention not to return and claim the exemption."] (emphasis added); *Taylor v. Mosty Bros. Nursery, Inc.*, 777 S.W.2d 568, 569 (Tex. App. – San Antonio 1989, no writ) ["To show abandonment of one's homestead interest, the party claiming abandonment must

show, *by clear, conclusive and undeniable evidence*, that the homestead claimant moved with the intention of not returning to the property."] (emphasis added); *In re Estate of Casida,* 13 S.W.3d 519, 521-22 (Tex. App. – Beaumont 2000, no pet.) ["The party claiming abandonment must plead it and carry the burden of proving it. *Said burden is a heavy one.*"] (emphasis added).

Upon examination of the evidence presented, Mr. Condit and the Trustee have clearly failed to satisfy the stringent burden imposed upon them to prove that the Debtor has abandoned her homestead rights in the Nueces County Property. The objecting parties contend that the Debtor's extended period of absence from the property evidences an abandonment. While removal from a property for an extended time is a factor for consideration, it must be emphasized that abandonment of a Texas homestead must be voluntary. *Driver v. Conley*, 320 S.W.3d 516, 519 (Tex. App. – Texarkana 2010, pet. denied) (*citing King v. Harter*, 70 Tex. 579, 8 S.W. 308, 309 (1888)); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 444 (Tex. App.– Austin 2006, pet. denied). Though it is uncontested that the Debtor felt compelled to depart from her Nueces County Property in 2004 and has been unable to reside there consistently since that date, mere removal alone from the homestead property is insufficient to demonstrate abandonment. *See, e.g., Hoffman v. Love*, 494 S.W.2d 591, 594-95 (Tex. Civ. App. – Dallas 1973, writ ref'd n.r.e.).[9] "An act of necessity is not a voluntary abandonment of the homestead." *Driver*,

---

[9] This rule comports with the statement in the Texas Constitution that "any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired." TEX. CONST. art. XVI, §51. Thus, the dispute regarding whether the property has ever been leased on a

320 S.W.3d at 519 [holding that incarceration is insufficient to establish an abandonment]. Texas courts for over a century have been particularly hesitant to declare the abandonment of a homestead when removal from the protected premises was promulgated by health concerns. *See, e.g., West v. Austin Nat. Bank*, 427 S.W.2d 906, 911-12 (Tex. Civ. App. – San Antonio 1968, writ ref'd n.r.e.); *Aman v. Cox*, 164 S.W.2d 744, 747 (Tex. Civ. App. – Eastland 1942, no writ); *Weitzman v. Lee*, 262 S.W. 859, 862 (Tex. Civ. App. – Amarillo 1924, writ ref'd); *Mealy v. Lipp*, 40 S.W. 824, 826 (Tex. Civ. App. 1897, writ ref'd) [all generally supporting the proposition, as stated in *Weitzman,* "[w]here the debtor temporarily leaves his home on account of the state of his health or that of some member of his family, it does not destroy the homestead character."].

The objecting parties also rely heavily on various documents that evidence the Debtor's current Tyler address. However, the fact that the Debtor has taken eminently reasonable steps to identify her daughter's address as her current place of residence and emergency contact point does not demonstrate abandonment. *Estate of Casida*, 13 S.W.3d at 522 ["The acquiring of a new home is not always the acquiring of a new homestead, and one does not necessarily abandon a homestead by merely moving his home."] (*quoting Rancho Oil Co. v. Powell*, 175 S.W.2d 960, 963 (Tex. 1943)); *Sanchez v. Telles*, 960 S.W.2d 762, 771 (Tex. App. – El Paso 1997, pet. denied) ["It is the acquisition of a new homestead, *not merely the acquisition of a new home*, which operates

---

short-term basis since the Debtor's departure is not controlling nor particularly germane.

as an abandonment of homestead rights."] (emphasis added).

On the other hand, the Debtor presented credible testimony that she left the Nueces County Property for one primary and legitimate reason — she could not care for herself. She insists that if she ever regained that capacity, she intends to return to her homestead in Corpus Christi. The fact that most of the Debtor's personal property remains at the Nueces County Property and that she has maintained many attributes of an active residence at that location (utilities, etc.) buttress that stated intent. The Debtor's mobility is deteriorating and she continues to suffer health problems. Will she physically ever be able at her age and in her condition to return and live alone at that residence? That is uncertain, but that uncertainty, coupled with the incidences of her current location in Tyler, is far from sufficient under Texas law to establish an intent by her to abandon her established homestead in Nueces County.

There simply has been no "clear, conclusive, and undeniable evidence" that the Debtor vacated the Nueces County Property with the intent to abandon her claimed homestead interest. Accordingly, the objection filed by Mr. Condit and the Trustee to the Debtor's homestead exemption claim pertaining to the Nueces County Property must be overruled.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[10] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters

---

[10] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or

in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 04/07/2011

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

as may be requested by any party.